[Cite as *State v. Love*, 2023-Ohio-3690.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2022-P-0069** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| AARON A. LOVE, | |
| Defendant-Appellant. | Trial Court No. 2021 CR 00724 |

## **O P I N I O N**

Decided: October 10, 2023
Recommendation: Affirmed in part, vacated in part

*Victor V. Vigluicci,* Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee)

*Shubhra N. Agarwal*, Law Offices of Agarwal & Agarwal, 3732 Fishcreek Road, P.O. Box 288, Stow, OH 44224 (For Defendant-Appellant)

ROBERT J. PATTON, J.

{¶1}   Appellant, Aaron A. Love ("Mr. Love"), appeals his convictions for resisting arrest, felonious assault, and assaulting or harassing a police dog or horse, following a jury trial in the Portage County Court of Common Pleas.

{¶2}   Mr. Love's convictions stem from an incident in which police officer, Devin Brown ("Officer Brown"), was injured while attempting to arrest Mr. Love on warrants for parole violations.

{¶3}   The following facts are derived from the trial record. On August 1, 2021, Officer Brown was one of four officers who arrived at Mr. Love's home with warrants for his arrest. Mr. Love's family let the officers in and informed them that Mr. Love was in the basement. After searching the basement, Officer Brown found Mr. Love in a crawl space and commanded him to come out. Officer Brown and another officer moved a metal shelf out from in front of the crawl space where Mr. Love was hiding, and as a result, wine bottles, along with other miscellaneous items, fell to the floor and broke. Officer Brown testified that Mr. Love tossed a wine bottle at him at one point during the incident.

{¶4}   After Mr. Love failed to comply with multiple commands to come out, Officer Brown twice attempted to tase Mr. Love but could not get a good connection. Officer Brown then commanded his police dog to pull Mr. Love out. Officer Brandon Bridgewater ("Officer Bridgewater") testified that Mr. Love struck and kicked the dog and used a Little Tykes table or tote bin to block himself and keep the dog from reaching him. When the dog was unsuccessful at reaching Mr. Love, Officer Brown got down to the ground and reached his arms into the crawl space to pull Mr. Love out himself. Officer Brown testified that Mr. Love pulled his arms into the crawl space while Officer Brown was attempting to pull Mr. Love out of the crawl space. Officer Bridgewater testified that he saw Officer Brown jerk forward into the crawl space toward Mr. Love. During this struggle between Officer Brown and Mr. Love in the crawl space, Officer Brown's wrist was raked over broken glass, severing an artery in his left wrist. Officer Brown emerged from the crawl space, with Mr. Love still inside, and Officer Eric Noall ("Officer Noall") noticed that Officer Brown was bleeding profusely. Officer Bridgewater then successfully tased Mr. Love and arrested him. Officer Brown and Officer Noall exited the house and Officer Noall placed

2

a tourniquet on Officer Brown's wrist until an ambulance arrived to transport Officer Brown to the hospital.

{¶5} Officer Brown was taken to University Hospital Portage Medical Center where his artery was cauterized and his wrist was stitched closed, and he received stitches for a laceration on his elbow. Officer Brown testified that after receiving medical care, he learned that an artery and nerve in his left wrist were cut in half, and that his injury required a subsequent nerve graft surgery. Officer Brown did, in fact, have that subsequent surgery within a few weeks of the initial incident. Officer Brown testified that since the injury, he has lost strength in his left arm, wrist, and finger, suffered increased sensitivity due to nerve damage, and has a permanent scar on his wrist.

{¶6} On August 5, 2021, Mr. Love was indicted for felonious assault in violation of R.C. 2903.11(A)(2) which proscribes: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." On the same date, Mr. Love was indicted for resisting arrest in violation of R.C. 2921.33(A). On July 19, 2022, a supplemental indictment for felonious assault in violation of R.C. 2903.11(A)(1) was filed against Mr. Love, which proscribes: "No person shall knowingly * * * [c]ause serious physical harm to another[.]" The supplemental indictment also charged Mr. Love for harassing a police dog or horse in violation of R.C. 2921.321(B)(1). Mr. Love pleaded not guilty to all charges.

{¶7} A jury trial was held on September 14, 2022. The jury found Mr. Love not guilty of the first count of felonious assault (felonious assault with a deadly weapon), guilty on the second count of felonious assault (felonious assault causing serious physical harm), and guilty as to all of the other remaining charges.

3

**{¶8}** Mr. Love asserts three assignments of error.

## Speedy Trial

**{¶9}** Appellant's first assignment of error states: "The trial court committed reversible error and plain error by proceeding to trial on the supplemental indictment in violation of Mr. Love's right to speedy trial."

**{¶10}** "An error must be brought to the trial court's attention, by objection or otherwise, [or] else it is waived for purposes of appeal. *Stores Realty Co. v. Cty of Cleveland, Bd. of Bldg. Standards and Bldg. Appeals* (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629." *State v. Burgess*, 11th Dist. Lake No. 2003-L-069, 2004-Ohio-4395, ¶ 18. An appellate court's review is limited to plain error when substantial rights are affected but are not brought to the attention of the court. *State v. Devai*, 2013-Ohio-5264, ¶ 17, 2 N.E.3d 993, 996, (11th Dist.). Mr. Love did not raise the issue of a speedy trial during the lower court proceedings. Thus, we review appellant's first assignment for plain error.

**{¶11}** "'When new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge.'" *State v. Baker*, 78 Ohio St.3d 108, 111, 1997-Ohio-229, 676 N.E.2d 883, 885 citing *State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025, 1027 (May 17, 1989).

**{¶12}** "[W]hen an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." *State v. Adams*, 43 Ohio St.3d 67, 538 N.E.2d 1025 (May 17, 1989).

4

Case No. 2022-P-0069

{¶13} "When additional criminal charges arise from facts distinct from those supporting an original charge, or the state was unaware of such facts at the time, the state is not required to bring the accused to trial within the same statutory period as the original charge under R.C. 2945.71." *State v. Baker*, at 112.

{¶14} Mr. Love's initial indictment for felonious assault with a deadly weapon occurred on August 5, 2021. At the same time, he was indicted for resisting arrest. Mr. Love was later charged with a supplemental indictment for felonious assault for serious physical harm, on July 19, 2022. The supplemental indictment was filed eleven months, or more than 340 days after the initial indictment. The supplemental indictment also added a charge of harassing a police dog.

{¶15} Mr. Love argues that his right to speedy trial was violated because the supplemental indictment arose from the same facts and circumstances as the initial indictment charges filed on August 5, 2021. Mr. Love waived his rights to a speedy trial for the initial indictment. However, when a supplemental indictment is derived from the same facts that were known at the time of the initial indictment, then the supplemental indictment is subject to the same speedy trial timeline as the original indictment. *Adams*, 43 Ohio St.3d 67, 68. Mr. Love argues that the new charges set forth in the supplemental indictment were based on facts known to appellee at the time of the initial indictment. Therefore, despite his waiver of a speedy trial in the initial indictment, that waiver could not apply to the second indictment.

{¶16} Officer Brown testified that it was months after the initial injury before he knew that there would be permanent scarring on his wrist and permanent diminished sensation in his left wrist and hand. Because a significant amount of time had elapsed

5

between the initial injury and knowledge of the permanent damage resulting, the new facts that served as the basis of the supplemental indictment for felonious assault could not have been known at the time of the indictment. Therefore, the felonious assault charge for serious physical harm set forth in the supplemental indictment did not violate Mr. Love's speedy trial rights.

{¶17} We do not reach the same conclusion as to the charge of harassing a police dog. Officer Brown testified that he saw Mr. Love kick his police dog, and Officer Bridgewater testified that he saw Mr. Love using a Little Tykes table or tote bin to hit the dog to keep him out of the crawl space. The facts supporting the supplemental indictment for harassing a police dog were known at the time of the initial indictment and were subject to appellant's speedy trial rights. Thus, the supplemental conviction for harassing a police dog did violate Mr. Love's right to a speedy trial, and the resulting misdemeanor conviction must be vacated. The first assignment of error is affirmed in part and overruled in part.

### Extrinsic Evidence for Impeachment Purposes

{¶18} Appellant's second assignment of error states: "The trial court committed reversible error in not permitting Mr. Love to use extrinsic medical records for purposes of cross-examining and impeaching Officer Brown with his prior inconsistent statements."

{¶19} "An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion." *State v. Finnerty*, 45 Ohio St.3d 104, 107-108, 543 N.E.2d 1233 (1989).

{¶20} Appellant argues that the court erred by not allowing him to use statements found in the medical records, recorded by hospital employees, and purportedly made by Officer Brown, for impeachment purposes. The medical records were proffered for review

6

for the purpose of this appeal. Several entries by hospital employees were recorded. One reads "Brown is a male patient with a chief complaint of trauma (laceration to L wrist/L elbow s/p tripped on glass on duty…)" while another entry reads "He was pursuing a suspect when he was moving objects and ran his arm against a broken glass." Another entry reads "on duty/police w/k9 tripped onto glass."

{¶21} This Court *In re A.C.*, 11th Dist. Ashtabula No. 2013-A-0024, 2014 WL 718355, ¶ 45-49, previously explained the proper application of using prior inconsistent statements to impeach a witness pursuant to Evid. R. 613(B) which provides:

> (B) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
>
> (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
>
> (2) The subject matter of the statement is one of the following:
>
>> (a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
>>
>> (b) A fact that may be shown by extrinsic evidence under Eivd.R. 608(A), 609, 616(A), or 616(B);
>>
>> (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

{¶22} *In re A.C.*, this Court noted:

> "[w]hen extrinsic evidence of a prior inconsistent statement is offered into evidence pursuant to Evid.R. 613(B), a foundation must be established through direct or cross-examination in which: (1) the witness is presented with the former statement;

7

Case No. 2022-P-0069

(2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement") (citation omitted).

*Id.* at ¶ 49, quoting *State v. Simpson*, 11th Dist. Lake No. 93-L-014, 1994 Ohio App. LEXIS 4472, 47, 1994 WL 587896 (Sept. 30, 1994). Accordingly, a proper evidentiary foundation must be established, including evidence that the witness made the prior statement, prior to evoking the provisions of Evid. R. 613(B).

{¶23} Here, counsel for appellant requested to impeach Officer Brown regarding statements found in the medical records that were inconsistent with how he testified he had acquired his injuries. Appellant called no witnesses nor provided any evidence to demonstrate that the statements contained in the medical records were statements made by Officer Brown. Without any way to know if the statements purported to be made by Officer Brown, in fact, were his own statements, the trial court properly limited appellant's use of the statements to an inquiry to which Officer Brown could admit or deny making the statements under our holdings in *In re A.C.* and *Simpson* as noted above. Thus, the trial court did not abuse its discretion by denying appellant's request to use the statements contained within the medical records for the purpose of impeaching Officer Brown.

{¶24} On appellant's second assignment of error, we affirm the trial court's decision.

Case No. 2022-P-0069

**Ineffective Assistance of Counsel**

{¶25} Appellant's third assignment of error states: "Mr. Love was denied his constitutional right to effective assistance of counsel at trial."

{¶26} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.E.2d 674 (1984). "Second, the defendant must show that the deficient performance prejudiced the defense." *Id*.

{¶27} "Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden of proof to demonstrate plain error on the record, and must show 'an error, i.e., a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings[.]' However, even if the error is obvious, it must have affected substantial rights, and '[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice…" *State v. Woods*, 10th Dist. No. 15AP-24, 2016-Ohio-661, ¶ 7, 47 N.E.3d 894, 897-98.

{¶28} Mr. Love asserts that the trial counsel's failure to object to the violation of the speedy trial timeline during the lower court proceedings constitutes ineffective assistance of counsel. Mr. Love further argues that trial counsel's failure to procure

9

witnesses to authenticate statements found in the medical record contributed to his ineffective assistance.

{¶29} For the reasons stated above, we have determined that the supplemental indictment charging felonious assault pertaining to serious physical harm did not violate Mr. Love's substantive rights. However, we agree that Mr. Love's misdemeanor charge of harassing a police dog violated Mr. Love's speedy trial rights. While appellant's first assignment of error, in part, has merit, we decline to review appellant's third assignment of error as it pertains to the failure to object to the speedy trial violation. This Court's review and finding as to appellant's first assignment of error renders any ineffective assistance of counsel claim regarding speedy trial violation as moot. Further, had we moved forward, appellant has not provided a transcript of the arraignment proceeding held on the supplemental indictment. App.R.9 provides: "it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record." Without a transcript, we cannot know if Mr. Love's counsel made an objection on speedy trial grounds or not, and we must presume the regularity of the proceedings below. *Knapp v. Edwards Lab'ys*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385 (1980).

{¶30} Appellant further argues he received ineffective assistance of counsel because of counsel's failure to subpoena a witness to authenticate statements made in the medical records that were purportedly made by Officer Brown.

{¶31} "In order to establish prejudice, an appellant must overcome a strong presumption that licensed attorneys are competent and that the challenged action is the

10

product of a sound strategy. *State v. Jones,* 9th Dist. No. 22545, 2005–Ohio–5502, at ¶ 18." *State v. Shirey*, 9th Dist. Summit No. 22593, 2006-Ohio-256, ¶ 13.

**{¶32}** "'The decision to call a witness is within the province of counsel's trial tactics.' *State v. Kovacic*, 2012-Ohio-219, 969 N.E.2d 322, ¶ 46 (11th Dist.). As one court aptly explained, 'In the opinion of trial counsel it may be advantageous * * * not to use a witness who, although helpful to the defendant in certain respects, could be made a harmful witness on cross-examination.' *O'Malley v. United States*, 285 F.2d 733, 734 (6th Cir. 1961). Thus, '"[d]ebatable strategic and tactical decisions will not form the basis for a claim of ineffective assistance of counsel, even if there had been a better strategy available."' *Kovacic* at ¶ 46, quoting *State v. Beesler*, 11th Dist. Ashtabula No. 2002-A-0001, 2003-Ohio-2815, ¶ 13." *State v. Schaade*, 11th Dist. No. 2021-A-0037, 2022-Ohio-4050, ¶ 24.

**{¶33}** Mr. Love's trial counsel made the decision not to call witnesses to authenticate the statements found in the medical records. Mr. Love's counsel expressed that he wished to use those purportedly inconsistent statements for impeachment purposes to attack the credibility of Officer Brown as a witness. While calling the witnesses may have helped Mr. Love's case in some respects, this Court does not have a basis to second-guess trial counsel's strategy cross-examining Officer Brown. A decision to call or not call witnesses is within the realm of trial strategy that would fall within trial counsel's discretion and does not constitute ineffective assistance of counsel.

**{¶34}** On the issue of failure to call witnesses and ineffective assistance of counsel, we find the appellant's claim lacks merit.

11

Case No. 2022-P-0069

{¶35} Accordingly, appellant's conviction related to harassing a police dog is vacated, all other convictions are affirmed.


MARY JANE TRAPP, J.,

EUGENE A. LUCCI, J.,

concur.